MADDOX, RUCKER & COMPANY v. WILSON.

1. The *fi. fa.* levied being an execution founded on the foreclosure of a mortgage made by a married woman, upon a phaeton, and the claim interposed resting upon a pledge of the same property made by her husband as security for a debt, this debt and the pledging to secure it being junior to the mortgage, and the creditor, at the time of the creation of the debt and the taking of the pledge, believing that the debt was that of the husband and that he owned the property, and, so far as appears, not knowing of the wife's title or of the mortgage executed by her, on the trial of the claim case evidence is admissible, in behalf of the plaintiff in execution,

that the husband came to plaintiff's office and said he needed money to finish certain vehicles he was making; that the business was his wife's business and she would make a mortgage; that the plaintiff consented; that the husband and wife were both present when the mortgage was executed; that he, the husband, read it over and explained it to her; that the creditor had already advanced her fifty dollars; that he paid into her own hands when she signed the mortgage one hundred and fifty dollars; that the mortgage was signed and the money paid in the warehouse where the phaetons were; that the husband was in possession at the time; that he said the money was to carry on his wife's business; and that the phaeton described in the levy is the one embraced in the mortgage. Treating the claimant as the husband's creditor and as claiming title under him, the claimant was in privity with the husband and consequently would be affected by his disclaimer of title in himself whilst he was in possession of the property, and by his recognition of title in the wife and her assertion of the same by executing the mortgage. The business being hers, the jury could infer that his possession was her possession, and hence that she was in possession at the time of executing the mortgage. This would make a *prima facie* case in behalf of the plaintiff in execution against the claimant.

2. A mortgage executed in May, 1884, and not recorded within thirty days thereafter, is inferior in dignity to the rights of a *bona fide* creditor of the mortgagor, who became such after the mortgage was executed and before it was recorded, and who received the property in pledge as collateral security at the time of extending credit and still has possession of the same. Whether usury in the transaction would affect the *bona fides* and prevent priority, *quære?*

3. A lender of money who, thinking the borrower wants it on his own credit and for use in his own business, takes for the loan the borrower's note under seal and as collateral security a pledge of personal property supposed to belong to the borrower, reducing the property to possession, may, after discovering that the borrower was the general agent of his wife in conducting the business and that the money was for use in her business, elect to treat her as the debtor in lieu of the husband, her agent, and may enforce payment of the debt out of the property pledged. Although the note, being under seal, would not bind her, no adequate authority to execute the instrument being shown, yet the loan of the money to be used in her business and upon the faith of a collateral afterwards proving to be her property would be a sufficient consideration for the pledge, and the pledging of the wife's property by the husband for money to be used in her business is sufficient evidence, in the absence of anything to the contrary, that he acted as her agent in procuring the loan, though he mani-

festly wished to conceal the agency and did conceal it, other testimony conclusively showing that he was at the time her general agent in carrying on and conducting her business.

4. As the general property in goods pledged remains in the pawner and the pawnee has only a special property therein, the statute declares that the goods may be seized and sold under execution against the pawner, but upon notice by the pawnee to the levying officer, his lien, according to its dignity, will be recognized in distributing the proceeds of sale. Code, §§2142, 2144. When the pawnee's title to his special property in the pledge is tainted with usury, this is his only remedy; for, in consequence of section 2057(i) of the code, he has no title which can be asserted in a claim case as against one who is in privity with the pawner. *Zellner* v. *Mobley* 84 *Ga.* 748.

5. The court did not err in overruling the motion for a new trial.

October 17, 1892.  By two Justices.          *Judgment affirmed.*

Before Judge MARSHALL J. CLARKE.    Fulton superior court.    March term, 1892.

A mortgage *fi. fa.* in favor of Wilson against Mrs. Finney was levied upon a doctor's phaeton or top buggy, as the property of Mrs. Finney, which was claimed by Maddox, Rucker & Co.   There was a verdict in favor of plaintiff in *fi. fa.*; claimants' motion for new trial was overruled, and they excepted.   The motion was upon the grounds that the verdict was against the weight of evidence and without evidence to support it; that the court erred in overruling claimants' motion for a nonsuit; and because the court permitted the plaintiff to testify, over objection of claimants, that Finney had stated that it was his wife's business.   It did not appear that any one was present except plaintiff and Finney.   Claimants objected because the declaration of Finney was not admissible for the purpose offered, and because the evidence was immaterial, irrelevant and hearsay.

Upon the trial plaintiff testified:  Finney came to my office and said he needed money to finish certain vehicles he was making, that the business was his wife's business and she would make me a mortgage.   I con-

sented. He and his wife were both present when the mortgage was executed, and he read it to his wife and explained it to her. I had already advanced her $50, and I paid into her own hands when she signed the mortgage $150. The mortgage was signed and the money paid in the warehouse where the phaetons were. Finney was in possession at the time. He said the money was to carry on his wife's business. The phaeton described in the levy is the one I have the mortgage on. I have seen it since the mortgage was made in Maddox, Rucker & Company's warehouse.—Another witness testified for plaintiff: Was working for Finney in 1884. There was in the shop a doctor's pony phaeton which, when finished, I carried to Maddox, Rucker & Company's warehouse. This was about May 1, 1884. Never saw Mrs. Finney about the shop. Mr. Finney managed the business.—The mortgage and note which it was given to secure were introduced. They were dated May 5, 1884, and the mortgage was for $200, and was recorded on July 14, 1884. It does not appear from the brief of evidence what property the mortgage covered, except as stated by Wilson as above, and in the *fi. fa.*

Claimants introduced a note given to them by Finney for $125, dated May 24, 1884, due fifteen days after date with interest at eight per cent. per annum, and containing the following sentence : "One pony phaeton and one wagon, my own property, fully paid for and unencumbered, as collateral, subject to sale either public or private without further notice, if this note is not paid at maturity." It contained no further stipulation indicating an intention to create a lien upon the property mentioned, or any other property. One of claimants testified: Lent Finney the money mentioned in the note, Finney saying it was to pay off hands. He was charged ten or twelve per cent. interest, and gave as col-

lateral the property mentioned in the note. Part of the note was paid before the property was levied on. Never knew Mrs. Finney. Did not know she had anything to do with the business. Finney has always been in charge of the business. Without the phaeton I do not think the collateral was worth as much as the amount of this note.—Mrs. Finney testified: My husband was my agent and managed the business. I never went about the shop. Do not know that I ever paid him for the business; it had formerly been his. Never had any more to do with the business after it became mine than before. Claimants' counsel, in opening his case, stated that the claimants elected to hold Mrs. Finney responsible and to treat Finney as her agent.

BURTON SMITH, for plaintiffs in error.

C. W. SMITH and BLALOCK & BIRNEY, *contra.*